THE MAYOR AND CITY COUNCIL OF EAST ORANGE v.
WILLIAM H. HUSSEY ET AL.

Argued June 8, 1904—Decided February 27, 1905.

In January, 1899, the township of East Orange, in pursuance of the
Drainage and Sewage act of March 4th, 1884, and its supple-
ments (*Gen. Stat., p.* 3636, &c.), adopted an ordinance for the
construction of the Black Brook valley drain, and the construc-
tion of the drain was finished in 1901. This drain was neither
a sewer nor a street improvement, its object being the drainage of
swampy land lying in the Black Brook valley. In December,
1899, the township became a city, by virtue of "An act for the
incorporation of cities, and providing for their officers, govern-
ment and powers," approved March 24th, 1899. On February
25th, 1900, the Drainage and Sewage acts above mentioned were
repealed by the revised Township act, passed March 24th, 1899.
*Held,* that after the completion of the drain the city of East
Orange was not entitled to have an assessment levied in accord-
ance with the provisions of the Drainage and Sewage acts, in
order to reimburse it for the expense of constructing the drain.

On *certiorari.*

Before Justices DIXON, FORT and SWAYZE.

For the city, *Philemon Woodruff.*

For the defendants, *Edward M. Colie* and *Robert H. Mc-
Carter.*

The opinion of the court was delivered by

DIXON, J. In pursuance of "An act to provide for drainage
and sewage in densely populated townships in which there is
a public water-supply," approved March 4th, 1884, and its
supplements (*Gen. Stat., p.* 3636, &c.), the township of East
Orange, on January 30th, 1899, adopted an ordinance for the
construction of the Black Brook valley drain, and its construc-
tion was completed about May, 1901. In December, 1899,
the township became a city, in accordance with the provisions
of "An act for the incorporation of cities, and providing for
their officers, government and powers," approved March 24th,

1899. *Pamph. L., p.* 283. By "An act concerning townships
(Revision of 1899)," which was approved March 24th, 1899,
but did not take effect until February 25th, 1900 (*Pamph.
L.* 1899, *p.* 372), the Drainage and Sewage act of 1884 and its
supplements above mentioned were expressly repealed. In
June, 1901, the mayor and city council of East Orange ap-
plied to the Circuit Court of Essex county for the appoint-
ment of commissioners to estimate and assess the benefits
derived from the construction of the Black Brook valley drain
by private lands in its vicinity. The only statute prescribing
such a course was one of the drainage supplements approved
April 2d, 1885, which had been repealed by the Township act
of 1899. After certain proceedings had been taken on that
application, the judge of the Circuit Court came to the con-
clusion, on objection made by property owners, that he was
without jurisdiction in the matter and adjudged that the pro-
ceedings taken, so far as they affected the persons objecting,
were null and void. These proceedings, with the adjudication
thereon, the city has brought into this court by *certiorari.*

The substantial question now before us is whether, not-
withstanding the incorporation of the city and the repeal of
the drainage supplement of 1885, the provisions of that sup-
plement for the assessment of benefits were preserved to sup-
port the application.

The argument by which the city endeavors to maintain its
position may be thus stated: Under the drainage supplement
of 1885 the township, by instituting proceedings for this im-
provement, acquired a right to have an assessment for benefits
levied in its favor; this right was in the nature of a property
right, and therefore passed to the city by force of section 8 of
the City act of 1899, which declared that any city formed
under it should become absolutely vested with all the "rights
and property" of the township of which it was the successor.
*Smith* v. *Hightstown,* 42 *Vroom* 536. As part of this right
the proceedings for enforcing it were preserved by sections 63
and 64 of the City act, which provide that "all proceedings
for the opening, widening, extending, grading, regulating,
and otherwise improving streets and avenues which may be

pending and remain unfinished at the time of incorporation under or adoption of this act by any * * * township, * * * shall be proceeded with and completed under the laws in force at the time such proceedings were commenced," "and all the provisions of this act relating to grading of streets shall be applicable to proceedings for the construction of sewers;" and the revised Township act of 1899, which formally repealed the drainage supplement of 1885, nevertheless left unimpaired both the right and the remedy by providing in section 94 that "vested rights, and public improvements and all proceedings relating thereto now instituted, shall not be affected or invalidated by this act."

Assuming that all other propositions in this argument are well founded, those relating to the preservation of the remedy appear to be untenable. According to the City act of 1899, which took effect in East Orange immediately upon its incorporation as a city in December, 1899, only proceedings for opening, widening, extending, grading, regulating and otherwise improving streets, and proceedings for the construction of sewers, which were then pending, were to be completed under the laws in force when the proceedings were commenced; and the proceedings for the construction of the Black Brook valley drain were not of the character thus indicated. This drain was not a sewer, for it was not designed to be a conduit for sewage, and the statute of 1884, under which it was constructed, plainly distinguished between sewers and drains. Nor was it intended to be a street improvement, although incidentally it might carry off the surface water in the streets through which it was laid. Its purpose and chief function were to draw off the water which saturated, and naturally would continue to saturate, the swampy Black Brook valley, and thus to improve by subsoil drainage about two hundred acres of private land. For this improvement, and not for the mere improvement of streets, does the city seek to levy an assessment. An assessment for such benefits was not, we think, such a proceeding as, according to the City act of 1899, was to be completed under the supplemental·Drainage act of 1885. If the City act had been silent on the subject of con-

tinuing pending proceedings, possibly the remedy for enforcing the right which the township was entitled to under the drainage acts might have been regarded as passing to the city as part of the right under section 8 of the City act; but in view of sections 63 and 64, which save pre-existing remedies in only defined cases, the retention of statutory remedies in other cases cannot reasonably be implied. *"Expressio unius, exclusio alterius."* We therefore are of the opinion that the city never acquired the right to have an assessment for this drain levied under the act of 1885.

The effect of the saving clauses in the revised Township act, which became operative after the incorporation of the city, need not be considered further than to observe that they did not attempt to vest in the city rights which it had not otherwise acquired.

It is further urged on behalf of the city that, inasmuch as commissioners appointed by the Circuit Court had reported to that court an assessment made under the act of 1885, it was the duty of the court, in case it was not satisfied with that assessment, and is now the duty of this court, to cause a proper assessment to be levied, in obedience to "A general act respecting taxes, assessments and water rates," approved March 23d, 1881. *Gen. Stat., p.* 3404. But we think this act applies only to cases where a tax, assessment or water rate is brought before the court by some party complaining against it, and not to cases like the present, where an incomplete assessment is reported to the court for confirmation. In such cases the court (as the Court of Errors and Appeals decided in this very litigation (41 *Vroom* 244) is but an agency in the municipal proceeding, taking part in the making of an assessment, and not reviewing an assessment already made. That duty was beyond the purview of the act of 1881.

The present function of this court is also outside of the scope of that act, for the only question arising in the case is whether the Circuit Court was bound to perfect the assessment proposed.

The proceedings of the Circuit Court are affirmed, with costs.